IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TERRY F. CRISMAN,<br><br>             Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>             Respondent.<br>_____ | )<br>)<br>)<br>)  Case No. CV 06-280-S-MHW<br>)<br>)  **MEMORANDUM DECISION**<br>)  **AND ORDER**<br>)<br>)<br>)<br>)<br>) |

**Introduction**

Currently pending before the Court for its consideration is Petitioner Terry F. Crisman's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed July 18, 2006.  The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, the administrative record (AR) and for the reasons that follow, will remand the matter to the Commissioner.

**I.
Procedural and Factual History**

Petitioner filed an application for Disability Insurance Benefits and Supplemental

---

[1] Michael J. Astrue is substituted for his predecessor Jo Anne B. Barnhart as Commissioner of the Social Security Administration.  Fed. R. Civ. P. 25(d).

**Memorandum Decision and Order - Page 1**

Security Income on January 28, 2004, alleging disability due to degenerative disc disease and hand injuries. Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Mary Bennett Reed held a hearing on February 7, 2006, taking testimony from Petitioner and vocational expert Tom Moreland. (AR 260-308.) ALJ Reed issued a decision finding Petitioner not disabled on April 28, 2006. (AR 14-23.)

Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner. (AR 5-7.) Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 53 years old. He has a high school education and his past relevant work includes saw mill laborer, log sorter, bin tender and sales clerk.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's degenerative disc disease, lumber spine and status post left hand laceration are "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the

**Memorandum Decision and Order - Page 2**

Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner had the RFC to perform light exertion work and was able to perform his past relevant work as a cashier or sales clerk. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Having found Petitioner not disabled at step four, the ALJ did not proceed to step five.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

**Memorandum Decision and Order - Page 3**

(1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Id.* It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

### A.   Petitioner's Credibility

Petitioner contends that the ALJ's decision does not contain any specific reasons for finding that he is not credible.  He claims that there is no affirmative evidence of malingering in the record or cited by the ALJ.  Petitioner also takes issue with the ALJ's following statement: "While Dr. Rust further explains in a subsequent letter to the attorney the claimant's decreased range of motion, it is still found to be within the claimant's control."  (AR 22).  Petitioner contends that by making this statement, the ALJ has taken her concern that Petitioner is malingering and imputed it to the physician.  He also argues that to disregard any evidence "found to be within the claimant's control" is to effectively eliminate evidence of any nature whatsoever except a narrow range of evidence such as blood tests, MRIs and x-rays.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by specific, cogent reasons.  *Id*.  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony.)  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony.  *Id*.  General findings are insufficient, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Reddick v. Chater*, 157

**Memorandum Decision and Order - Page 5**

F.3d 715, 722 (9th Cir. 1998).  The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider:  location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* Soc. Sec. Ruling 96-7p, 1996 WL 374186.

The ALJ has given clear and convincing reasons for her credibility finding.  In her decision, the ALJ found that the Petitioner's statements concerning the intensity, duration and limiting effects of his symptoms were not entirely credible.  (AR 20).  In support of this statement, the ALJ noted that the records from Petitioner's treating and consulting physicians do not support his contention that he is unable to perform any work and points to several places in the record where physicians, including Drs. DiBenedetto, Geyman and Carraher, stated that Petitioner could return to work, in particular light-duty work.  (AR 20, 143, 169, 211).  The occupational therapist also opined that Petitioner could return to full time employment.  (AR 226).  The ALJ noted that medications have been relatively effective in controlling Petitioner's symptoms and also noted that Petitioner did not always take his pain medication and when he did

**Memorandum Decision and Order - Page 6**

not do so, his pain became worse. The ALJ's statement that Petitioner's decreased range of motion "could be found in claimant's control" could obviously refer to the fact that when Petitioner took this medication, his pain symptoms improved. A decision to take or not take medication would "be within claimant's control." This statement does not lead to an inference that the ALJ believed the Petitioner was malingering. The ALJ found that there were several inconsistencies in the record and that Petitioner's daily activities were not as limited as one would expect given his complaints of disabling symptoms and limitations. (AR 21). It was also noted that Petitioner's current work activity is inconsistent with his complaints of numbness in his legs and feet. (AR 21).

As stated above, it is the ALJ's job to determine credibility. *See Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). There is substantial evidence in the record to support the ALJ's finding that the Petitioner was not fully credible as the ALJ took into consideration inconsistencies between Petitioner's daily and work activities and his alleged inability to work, the amount of pain medication he took and how often, and that many of Petitioner's treating or examining physicians opined that he was could perform, at least, light duty work.

**B.     Rejection of Dr. Rust's Opinion**

Petitioner takes issue with the "little weight" the ALJ gave to Dr. Rust's opinion and the heavy reliance on Dr. Carraher's opinion. Petitioner argues that the reasons given for rejecting Dr. Rust's opinion apply equally to Dr. Carraher's opinion, which the ALJ cites to several times. Petitioner points out that Dr. Carraher's report was a one-time evaluation, there are no chart notes but just an assessment letter and the only objective finding cited was an MRI. On the contrary, according to Petitioner, Dr. Rust provides great detail in explaining his findings in both

his assessment form and letter. Petitioner also contends that the only real difference between the opinions of Dr. Rust and Dr. Carraher is that Dr. Rust actually stated an opinion as to how long Petitioner could stand and that Dr. Rust's standing limitation was based on the examination findings and an MRI.

Respondent submits that the ALJ found Dr. Rust's assessment was not persuasive based on the fact that it was simply an assessment form with no explanation for the basis of his opinion and there were no chart notes to support the limitations assessed. The ALJ found it significant that Petitioner remained neurologically intact with normal motor testing. Respondent maintains that the ALJ found Dr. Rust's opinion to be inconsistent with most of the medical opinions of record, including Petitioner's physical therapist and treating nurse practitioner and all of these were specific and legitimate reasons for rejecting the contradicted opinion of Dr. Rust.

An ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To reject the contradicted opinion of an examining physician, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Id*. *See also Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *See id*.; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595

(9th Cir. 1999).

Dr. Rust's opinion that Petitioner is disabled (AR 259) is contradicted by the opinions of Drs. DiBenedetto, Geyman and Carraher, who opined that Petitioner could perform, at least, light duty work. (AR 143, 211, 169). Because Dr. Rust's opinion was contradicted, the ALJ had to provide specific, legitimate reasons for not giving the opinion controlling weight, which she did. In affording Dr. Rust's opinion "little weight," the ALJ noted that it was a one-time evaluation, there were no chart notes, and it was a conclusory opinion in the form of an assessment questionnaire that provided no explanation for the basis of the opinion. An ALJ may discredit opinions that are conclusory, brief and unsupported by the record as a whole, or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ also found that the only objective finding cited was an MRI and it was noted that the Petitioner is neurologically intact with normal motor testing. As stated above, the ALJ may discredit a physician's opinion when it conflicts with clinical findings and other physicians' treatment notes and medical opinions.

Regarding Petitioner's argument that Dr. Rust's opinion was in the same form as Dr. Carraher's opinion, which the ALJ cites to several times, the Court disagrees with Petitioner's characterization of the two opinions. Dr. Carraher goes into a detailed account of his physical examination of Petitioner and his findings based on that examination. Dr. Rust's opinion was in the form of a residual functional capacity questionnaire and a brief letter to Petitioner's attorney in which he included some clinical findings. Although both Dr. Rust and Dr. Carraher may have conducted one-time evaluations, that was not the only reason the ALJ gave little weight to Dr. Rust's opinion. In addition to noting Dr. Rust's opinion was conclusory and unsupported by the

**Memorandum Decision and Order - Page 9**

record as a whole, the ALJ found it conflicted with clinical findings and the opinions of other physicians, including Petitioner's treating physicians. The ALJ has stated specific and legitimate reasons for not assigning controlling weight to Dr. Rust's opinion. If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## C.      Residual Functional Capacity and Following the Directives of SSR 96-8p

Petitioner argues that he has less than light exertional level residual functional capacity (RFC) and that the ALJ failed to analyze whether Petitioner has the ability to stand 6 hours of an 8 hour day in order to perform light work as defined by the Dictionary of Occupational Titles. Petitioner claims the ALJ relied heavily on a consultative exam conducted by Dr. Carraher in which he found that he could do light work as defined by the DOT. Petitioner also asserts that the ALJ failed to follow the directives of SSR 96-8p by not making a specific finding in her decision of how long Petitioner could stand.

Social Security Regulations require that an ALJ provide a "narrative discussion describing how the evidence supports" his or her RFC conclusion. SSR 96-8p, 1996 WL 374184 at *7. The ALJ must discuss "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week...)" *Id*. A "function-by-function" assessment is necessary to arrive at an accurate RFC. *Id*. at *3. This requires separate consideration of the "seven strength demands: i.e., sitting, standing, walking, lifting, carrying, pushing and pulling." *Id*. at *5. Only after that may RFC be expressed in terms of the exertional levels of work including sedentary, light, medium, heavy and very heavy. *Id*. *See also Butler v. Barnhart*, 353 F.3d 992, 1000 (C.A.D.C. 2004).

**Memorandum Decision and Order - Page 10**

In the ALJ's determination of Petitioner's RFC, she discussed Petitioner's testimony, his medical records and the third-party questionnaires of his brother and manager.  This included some discussion of Petitioner's claimed limitations and what limitations his physicians placed on him.  The ALJ concluded that Petitioner has the residual functional capacity to perform light work with only occasional climbing of ladders, ropes and scaffolds and crawling and the need to avoid concentrated exposure to vibration.  (AR 20).

The ALJ made no finding as to how long Petitioner could sit, stand or walk or how much he can lift.  The ALJ did not make a function-by-function assessment of the Petitioner's capacity to work.  The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).  The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  SSR 83-10, 1983 WL 31251.  Light work requires occasional stooping and the use of arms and hands to grasp, hold and turn objects.  *Id.*  The ALJ did not make any findings as to how much Petitioner could lift nor how often.  The ALJ also did not determine how long Petitioner could stand or walk in an 8-hour workday.  The ALJ's finding that Petitioner was capable of light work does not comply with Soc. Sec. Ruling 96-8p.  The ALJ did not discuss Petitioner's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis.  Although the ALJ discussed Petitioner's testimony and his medical records, she did not establish how she arrived at the conclusion that Petitioner could perform light work.  Particularly, she did not provide a function-by-function assessment that supports her finding that Petitioner is capable of light work.  While some may argue that this is only a "technical" deficiency in an otherwise well reasoned opinion by the ALJ, the Court has no

**Memorandum Decision and Order - Page 11**

recourse but to remand when the Commissioner has not complied with his own regulations.

## V.
## Conclusion

Based on its review of the entire record, the Court finds it necessary for this matter to be remanded to the Commissioner of the Social Security Administration.  The Commissioner must evaluate Petitioner's RFC in accordance with SSR 96-8p.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)  Plaintiff's Petition for Review (Docket No. 1) is GRANTED.

2)  This action shall be REMANDED to the Commissioner for review in accordance with this order.

3)  This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: March 21, 2008

*/s/ Mikel H. Williams*

Honorable Mikel H. Williams
Chief United States Magistrate Judge